**BY: CHRISTOPHER JAY EVARTS, ESQ.**          **ATTORNEY FOR THE PLAINTIFF**
Identification No. 61446                                      **AND CLASS**

---

G. VERONICA WILLARD                        **EASTERN DISTRICT OF PENNSYLVANIA**
319 PELHAM ROAD
PHILADELPHIA, PA 19119
          v

BANK OF AMERICA                              **CLASS ACTION COMPLAINT**
100 No. TRYON STREET
CHARLOTTE, NC 28255

BANK OF AMERICA
   CONSUMER CREDIT
100 No. TRYON STREET
CHARLOTTE, NC 28255

BANK OF AMERICA
  FUNDING LLC
100 No. TRYON STREET
CHARLOTTE, NC 28255

and

BLATT HASENMILLER, ET AL
1835 MARKET ST., SUITE 501
PHILADELPHIA, PA   19103

and

John Does   1-100

## CLASS ACTION COMPLAINT

Plaintiff, G. Veronica Willard, by and through her undersigned counsel, brings this complaint on her own behalf and on behalf of all others similarly situated in Pennsylvania, pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §§1692-1692p (FDCPA); and the statutes of the Commonwealth of Pennsylvania (the Pennsylvania Fair Credit Extension Uniformity Act (FCEUA), 73 P.S. §§2270.1-227., to obtain actual damages, punitive damages, treble damages, statutory damages, declaratory and injunctive relief, costs of suit, attorney's fees, and other appropriate relief from defendants. Plaintiffs complain and allege as follows:

## INTRODUCTION

1.  This case is brought by Plaintiff as a proposed class action on behalf of consumer debtors of the Bank of America credit card against the credit card issuer, Bank of America,and their law firms.

2.  At least since October 20, 2006, the date of the within-described Pooling and Servicing Agreement, Defendants have engaged in a scheme whereby they issue credit cards to consumers and, then seek to collect the amounts allegedly due from each card holder's use of the credit card, despite the fact that Bank of America has sold, transferred, assigned or otherwise conveyed its beneficial interest in each consumer's credit card account to a trust as part of a financial transaction known as a credit card securitization. Having relinquished its beneficial interest, Bank of America no longer has a debt obligation owed to it by Plaintiff or the Class.

**PARTIES**

3.   Bank of America is the credit card issuer, Bank of America sells the account to Bank of America Consumer Credit Services after a balance is created.   Bank of America Consumer credit services then sells the account to Bank of America Funding LLC. Bank of America Funding LLC then sells the account to the Wilmington Trust Company, which began buying Bank of America Corporate debt in 2009.   Prior to 2009 several different entities bought Bank of America debt.

4.   Wilmington Trust Company then underwrites a bond offering. The bonds are placed into tranches from senior debt to junior debt and each tranches has a certain amount of assets. Bank of America Consumer Credit Services still services the account by sending out bills and accepts payment, but Bank of America has given up ownership rights as required to Wilmington Trust Company, therefore Bank of America and its entities have given up its rights to sue its cardholders when they default on their debt. Despite the fact that Bank of America intentionally relinquished its beneficial interest in Bank of America accounts, it has continued to pursue, along with its affiliates and the defendant law firms, collection lawsuits against Plaintiffs and members of the Class to recover the obligations allegedly owed on the Bank of America accounts.

5.   Plaintiffs and the class continue to suffer monetary damages as a result of defendants' unlawful and improper conduct including, but not limited to, making payments to defendants and or incurring other costs related to the defense of defendants improper efforts to collect relinquished debts from plaintiffs and the class

## JURISDICTION AND VENUE

6.   Jurisdiction of this Court arises under FDCPA, 15 U.S.C. §1692k (d), FCEUA, 73 P.S.

§2270, 28 U.S.C. §§1331 (federal question) and §1367(a) (supplemental jurisdiction),Racketeering

Influenced and corrupt Organizations Act   18 section 1962 (hereinafter referred to as RICO) .Venue

is appropriate in this federal district, pursuant to 28 U.S.C. § 1391, because events and omissions

giving rise to Plaintiff's claims occurred within this federal judicial district and because .Defendants

reside and/or regularly transact business within this federal judicial district.

## CLASS ALLEGATIONS

7.   This action is brought as a class action pursuant to Federal Rule of Civil Procedure 23 on

behalf of all persons and entities who were injured by and/or suffered losses (as set forth more fully

herein) as a direct or indirect consequence of Defendants' unlawful debt collection scheme

(hereinafter referred to as "the Class").   The Class is more specifically defined as and applies to:

Unjust Enrichment, The Fair Debt Collection Practices Act, , Fraudulent Misrepresentation, and

RICO

> All United States residents who were sued for collection on an
> alleged debt in the past six years associated with an open-end
> credit card account with Bank of America, where such debt was
> subject to securitization where no termination statement was filed
> and the debt was written off

**The Subclass is more specifically defined as and applies to:**

> Claims regarding Pennsylvania Fair Credit Extension Uniformity Act
> and Unfair trade practices and consumer protection law.   All
> Pennsylvania residents who were sued for collection on an alleged
> debt in the past six years associated with an open-end credit card
> account with Bank of America, where such debt was subject to

securitization with no termination statement being filed and the debt was written off.

All of the Defendants named herein are excluded from the Class, as are their directors, officers, employees, parents, affiliates and subsidiaries; their predecessors, successors, agents, legal representatives, heirs and assigns; government entities; and any person controlled by any excluded person. Also excluded from the Class are any judges or justices to whom this action is assigned, together with any relative of such judge(s) or justices(s) within the third degree of relationship, and the spouse of any such person.

The Class consists of thousands of consumers who reside in the United States thereby making individual joinder impractical in satisfaction of the requirements of Fed. R. Civ. Proc. 23(a)(1). Plaintiffs are unable to provide an approximation of the number of potential consumer Class members, but notes that Bank of America Defendants have had and continue to have millions of card holders throughout the country.   If just a small percentage were subject to the unlawful and improper conduct alleged herein, like Plaintiffs, Class membership would be in the thousands.

8.   The factual and legal basis of Defendants' unlawful debt collections scheme and the concealment of the same satisfy the requirements of Fed. R. Civ. Proc. 23(a)(2), because they are common to all members of the Class and represent a common thread of misconduct resulting in injury to Plaintiffs and all members of the Class.

9.   Questions of law and fact common to Plaintiffs and the Class abound in this case, and those questions predominate over any questions affecting individual Class members. These

common questions of law and fact include, but are not limited to, the following:

(a) Whether Defendants engaged in the debt collection scheme, and the concealment of the same;

(b) Whether Defendants engaged in unfair and deceptive acts or practices in their scheme of improper debt collections;

(c) Whether Defendant engaged in a pattern and practice of misleading and deceiving the Courts of the United States, Plaintiffs, and the Class and suppressing the unlawful conduct;

(d) Whether Bank of America Consumer Credit Services, Bank of America Funding, and Bank of America violated the Fair Debt Collection Practices Act and the RICO Act;

(e) Whether Bank of America violated the Pennsylvania Fair Credit Extension Uniformity Act;

(f) Whether Plaintiff and the Class are entitled to injunctive and declaratory relief;

(g) Whether Plaintiffs and the Class are entitled to an award of reasonable attorney's fees, prejudgment interest, post-judgment interest and costs of suit; and

(h) Whether Bank of America filed lawsuits illegally on debt that was owned by Wilmington Trust.

10.   Plaintiffs are members of the Class, and their claims are typical of the claims of the members of the Class, in satisfaction of the requirements of Fed. R. Civ. Proc. 23(a)(3), in that Plaintiffs have been damaged by the same conduct as all of the members of the Class. The damages suffered by Plaintiffs, as set forth more fully herein, consist of injuries, including but not limited to, mental anguish, emotional distress, damage to credit reputation, said payments to Defendants, and/or costs and/or attorney's fees to defend the below-described collection matters.

11.   In satisfaction of the requirements of Fed. R. Civ. Proc 23(a)(4), Plaintiffs will fairly and adequately protect the interests of the members of the Class, and have retained counsel experienced and/or competent in the prosecution of debt collection and class action litigation.

12.    A class action provides a fair and efficient method for the adjudication of this controversy. Because of the size of the individual claims, many members of the Class cannot afford to seek legal redress individually for the wrongs complained of herein. The claims are not large enough to justify either a contingent fee or an hourly legal fee arrangement, given the substantial time and expense associated with prosecuting claims of this type. Absent a class action, therefore, members of the class will suffer uncompensated loss. In addition, by aggregating their claims in a class action, Class members will likely receive the benefit of reduced legal expenses.

13.    The failure of Bank of America to demand Wilmington Trust file a termination statement makes any lawsuit B**ank of America files illegal because they are not the real party in interest**

14.    First, under the terms of the Uniform Commercial Code and applicable sections of the Pooling and Servicing Agreement, the "account" includes any receivables that may be generated by a credit card account owner.   Under Bank of America's securitization scheme, Bank of America securitizes the receivables and the trustee of the credit card trust owns a secured interest in the receivable as evidenced by a UCC financing statement Where, as here, Bank of America does not require that Wilmington trust terminate the record lien on the securitized receivable, it is attempting to sell a debt owned by another party.

15.    Further, the securitized debt (i.e., the credit card receivable) is the entire basis for the collection action.   For purposes of the FDCPA, the Appellees violated the FDCPA by not securing a release of the lien prior to initiating a collection action on the securitized receivable.

16.   Second, Plaintiff-Appellant has no legal obligation or ability to demand that a UCC termination statement be filed prior to Bank of America selling the securitized receivable to a third party for collection.   At the outset, if the credit card account is not paid in full, Plaintiff may not request that a termination statement be filed by Wilmington trust, since she still owes Bank of America the debt and she is not in privity of contract with Wilmington trust.

17.   When Bank of America securitizes its receivables and receives value in return for the securitization, it is the only party that may demand that the UCC termination statement be filed to release the lien held by the other party to the securitization transaction.   Indeed, for purposes of the debtor demand of UCC § 9-513, Bank of America is the "debtor" in the securitization transaction. If Plaintiff had the ability to make this demand, she would be able to circumvent the rights of the trustee in the securitized receivable – a result no secured party would contemplate.

18.   Under applicable state law, the debtor in secured transactions in which the collateral is not consumer goods may demand a termination statement when the debtor believes the secured debt is paid and the secured transaction is at an end.   Within twenty days after a secured party receives an authenticated demand from the debtor, the secured party must send to the debtor a termination statement or File the termination statement.    1999 § 9-513(c). That duty of the secured party arises upon such demand from the debtor if there is no obligation remaining and no commitment to make an advance in the future.   1999 § 9-513(c)(1).   The obligation to provide or file the termination statement also arises after debtor's demand if accounts or chattel paper were sold but as to which the account debtor or obligor has discharged their obligation; or when the goods were subject to a

consignment to the debtor but are not in the debtor's possession; or the debtor did not authorize the filing of the initial financing statement 1999 § 9-513(c )(2) – (4)


19.   In order for the receivable to be securitized the receivable must be sold six times.   See, e.g., Bank of America Prospectus dated February 7, 2015 (the "Prospectus ") (a flowchart of the securitization scheme employed by Bank of America Defendants).   The copy of the Prospectus is attached hereto, incorporated herein, and marked as EXHIBIT "A."   F.I.A. card services sells it to Bank of America Credit Card Services.   Bank of America Credit Card Services then sells it to Bank of America Funding.   Bank of America Funding then sells it to Bank of America Master Card Trust Two, and evidences the transfer of all right, title and interest in the credit card receivable to the trust by filing a UCC financing statement (as public evidence of the record lien).   Bank of America Master Card Trust Two then sells it to Bank of America Master Card Trust. Bank of America Master Card Trust then sells it to Wilmington Trust. Wilmington Trust then sells it as a corporate bond to the bond market.


20.   The record lien in favor of Wilmington Trust is recorded in the state where the card holder is located.   This lien can only be removed in two ways: (i) if the secured party to the securitization scheme demands that a UCC termination statement be filed under certain circumstances, or (ii) if the UCC financing statement expires by operation of law after five years from the date of filing.   It is important to note that the UCC does not provide for the termination of a UCC financing statement if a credit card account holder defaults under the terms of the credit card agreement, If the financing statement expires after five years, Bank of America can file a continuation statement to allow the financing statement to stay in effect.

21.   In the event of a default Bank of America must request that Wilmington Trust file a termination statement to terminate the financing statement that Bank of America filed.   See, pp. 9 of 22 to 10 of 22 (PSA §2.04(d)(iii)) ; 13 Pa. C.S. §9-513(c)(1); 72 Del. Laws, c. 401, §9-513(c)(1). If Bank of America does not do this any lawsuit that they file would be illegal because they are not their own party of interest.

22.   Under Pennsylvania law, only the real party in interest may bring a lawsuit to collect a debt. Pa. R.C.P. 2002(a); In re Janice Walker, 466 B.R. 271, 76 UCC Rep Serv.2d 818 (Bankr. E.D. Pa. 2012).   In Pennsylvania it is considered a misdemeanor when you are not the real party of interest. Bank of America is violating Pennsylvania law which states that if you are not the real party of interest it is a misdemeanor to file a lawsuit.

23.   Plaintiff is not in privity of contract with Wilmington Trust so she would have no right to demand a termination statement be filed by Wilmington Trust.   Additionally, when an account is defaulted, Plaintiff has no right to demand a termination statement.   Plaintiff can only make this demand when an account is paid in full.

24.   Pennsylvania has the most significant relationship with the parties.   Courts look to the form with the most significant relationship with the parties in the contract.   Forestal Guarani S.A. v. Daros Int'l, Inc., 613 F. 3d 395, 401 (3d Cir 2010).

> Restatement (Second) of Conflict of Laws § 188 (1971)
>
> In the absence of an effective choice of law by the parties (see § 187), the forum, in applying the principles of § 6 to determine the state of most significant relationship, should give consideration to the relevant policies of all potentially interested states and the relative interests of those states in the decision of the particular

issue.  The states which are most likely to be interested are those which have one or more of the following contacts with the transaction of the parties.  Some of these contacts also figure prominently in the formulation of the applicable rules of choice of law.

The place of contracting.  As used in the Restatement of this Subject, the place of contracting is the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding effect, assuming, hypothetically, that the local law of the state where the act occurred rendered the contract binding.

The place of performance.   The state where performance is to occur under a contact has an obvious interest in the nature of the performance and in the party who is to perform.   So the state where performance is to occur has an obvious interest in the question whether this performance would be illegal (see § 202).   When both parties are to perform in the state, this state will have so close a relationship to the transaction and the parties that it will often be the state of the applicable law even with respect to issues that do not relate strictly to performance.   And this is even more likely to be so if, in addition, both parties are domiciled in the state.

25.   The most significant contact was Pennsylvania.   Plaintiff opened her credit card account in Pennsylvania and generated receivables through the use of her credit card in Pennsylvania.   The Plaintiff and the collateral were both located in Pennsylvania.   The financing statement (and the requisite termination statement (if any)) was filed with the Secretary of State's office in Pennsylvania, and the evidence of the record lien held by Wilmington Trust (and its subsequent release (if any)) can be found in Pennsylvania.   The contract was negotiated in Pennsylvania.   U.C.C. § 9-501(a)(2) states very clearly that the financing statement is to be filed in a location designated by each state.   Therefore, all of the requirements are satisfied for Pennsylvania law to be applied.

26.   Pennsylvania Law requires that the real party in interest be the named party.   Therefore, the Trustee, as record holder of a lien on the securitized receivable (which means the "account"

under the terms of the PSA and UCC), is the real party in interest and must be the named party to the collection action.

27.   In light of the foregoing, Defendants violated the FDCPA by not naming the Trustee as the Plaintiff in the collection action.   Under the UCC and the terms of the PSA, the term "account" includes receivables.   Thus, if there is a record lien on the securitized receivable, there is also a record lien held by the Trustee on the "account." Since Defendants failed to file a termination statement on the receivable (which includes the "account"), Defendants ran afoul of the FDCPA by not naming the Trustee as the Plaintiff in the collection action.

28.   The foregoing is the exact same procedure that mortgage companies are required to follow. The mortgage PSA and securitization structure is exactly the same as a credit card PSA securitization structure.   Therefore mortgage cases would apply to the credit card industry.   In the case of in re Janice Walker, the courts stated, that the U.C.C. is the central element to examine when deciding securitization issues.   The court clearly stated that the PSA does not overrule the U.C.C. which is the applicable law of both Delaware and Pennsylvania.   Bank of America cannot claim that Delaware law applies when it is contradictory to the state laws of Pennsylvania.

29. This action satisfies the requirements of Fed. R. Civ. Proc. 23(b), because:

(a)      Common questions of law and fact predominate over questions affecting only individual Class members;

(b)      Separate actions by individual members of the Class against Defendants would create a risk of inconsistent or varying adjudications for members of the Class and of incompatible standards of conduct for defendants;

(c)     Separate actions by individual members of the Class against Defendants would also be dispositive of the interests of other members not parties to the adjudication and would substantially impair or impede their ability to protect their interests;

(d)     Plaintiffs have no knowledge of any other class claims currently pending that specifically address the issues raised herein; and

(e)     This Court is the most appropriate forum in which to prosecute and resolve this litigation because Plaintiffs, the members of the class, and Defendants were or are all residents of and/or regularly conducted business within the Commonwealth of Pennsylvania, and the United States and separate prosecution of claims by each individual member of the Class against Defendants would create enormous difficulties and expense for the Court, the parties, and the public at large, requiring each member of the class to establish Defendants' liability (if they could afford to do so), would result in duplicative proceeds and unnecessary consumption of judicial and other resources, could cause incomplete development of the facts relevant to Plaintiffs' claims, and could result in inconsistent rulings regarding discovery and other matters.

30. This action meets the requirements of Fed. R. Civ. Proc. 23(b)(2), because Defendants have acted and continue to act improperly and unlawfully with respect to the Class, thereby making equitable and declaratory relief appropriate with respect to the Class as a whole.

31. At all times relevant hereto, Bank of America was in the business of issuing the Bank of America credit cards to consumers, including Plaintiffs and the Class.

32.   On or about August 24, 2004, Bank of America opened for G. Veronica Willard which she used for personal and household purposes, a credit account. On unknown dates, Bank of America opened for each member of the Class a Bank of America credit card account. At some point after these accounts were opened the account was sold to a trust and securitized Bank of America still accepted payments on these accounts even though they no longer owned the accounts.

33.   Additionally Bank of America sold or assigned debts that had been previously written off.

34.   At all times relevant hereto, Bank of America's primary revenues came from interest income on loan receivables, securitization income derived from the transfer of credit card loan receivables, securitization trusts and subsequent issuance of beneficial interests through securitization transactions (hereinafter referred to as "the credit card securitization").

35.   In order to earn securitization income from the credit card securitization, Bank of America sold its credit card receivables to a securitization trust.

36.   The credit card securitization process is set forth in the amended and restated Pooling and Servicing Agreement between Bank of America, as seller, and Wilmington Trust as trustee (hereinafter referred to as the Pooling and Servicing Agreement"). A copy of the Pooling and Servicing Agreement is attached hereto, incorporated herein and marked as **EXHIBIT "B".**

37.   Bank of America has in the past justified their behavior by stating that the account is separate from the receivable.   This is untrue.   The account is a non-entity without the receivables. 13 Pa. C.S. §9-102(a) (defining account to include the receivables); 13 Pa. C.S. §9-513(c) (requiring termination statements to be filed to release record lien held against a securitized receivable).   A credit card loan is different from a home loan or a car loan.   In a car loan and a home loan, you have collateral that can be taken when the loan defaults, which is separate from the account.   In a credit card, the receivables are the account.   Without the receivables there is no account.   They are one and the same.   In fact, in Bank of America's own PSA they state, at page 37, that the collateral

constitutes "accounts," and that the term "account" has the same meaning as under Delaware law. Bank of America's own language states that accounts are one and the same with receivables. Accordingly, any distinction that Defendants make with respect to "account ownership" vs. "receivable ownership" is a red herring and must be ignored by this Court.  According to the Pooling and Servicing Agreement, prior to the commencement of the below-described collection matters, Bank of America sold, transferred, assigned, or otherwise conveyed the receivables owing under the Bank of America accounts to a trust pursuant to the Pooling and Servicing Agreement for the benefit of its certificate holders (hereinafter referred to as "the Trust").(Section 2:01) Pooling And Servicing Agreement).

38. Upon information and belief, the receivable allegedly owing under the Bank of America Card account was securitized.

39.  The Trust is not a subsidiary of Bank of America.

40.  The Trust is excluded from Bank of America's consolidated financial statements in accordance with generally accepted accounting principles in the United States (hereinafter referred to as "GAAP").   Because its securitization activities qualified as sales under GAAP and were not treated as secured financial transactions, Bank of America removed credit card receivables equal to the amount of the investors' interests in its securitized loans from its consolidated statements of financial conditions (hereinafter referred to as "the Transferred Assets").

41.   Bank of America received consideration or compensation for the Transferred Assets.

42.   As of the time of the transfer, Bank of America surrendered control over the Transferred Assets to the Trust and thereafter no longer maintained effective control over the Transferred Assets.

43.   Pursuant to the Pooling and Servicing Agreement, all collections received by the Defendants were deposited by them into collections accounts maintained by Bank of America.

44.   On January 9, 2015, Bank of America commenced a collection lawsuit against Plaintiff by filing the civil action complaint which is attached hereto as **EXHIBIT "C."**   Christina Ordonez, an agent on behalf of Bank of America in her individual capacity, verified in the Affidavit of Claim, the accuracy of the collection matter Complaint.   On February 5, 2016, at the Philadelphia Arbitration Center, Bank of America was awarded a judgment against Veronica Willard even though they were not the real party of interest.   Counsel for Bank of America stated at that hearing that they had written off the debt that Veronica Willard had incurred.

45.   Pursuant to Pa. R. Civ. Proc. 2002, Bank of America was not the proper plaintiff in the collection matter because it was neither beneficially interested in the balance claimed in the collection matter allegations nor was it acting in a fiduciary or representative capacity for any party that was beneficially interested.

**COUNT I**
**UNJUST ENRICHMENT**
**AGAINST ALL DEFENDANTS**

Plaintiff and the class incorporate by reference the foregoing paragraphs as though fully set forth herein.

46. Pursuant to the Pooling and Servicing Agreement, Bank of America surrendered its right to collect on the obligation of the Bank of America credit card account. As set forth above, by way plaintiff's said payments to Bank of America, benefits were conferred on Bank of America, After G. Veronica Willard's account was securitized Bank of America continued accepting payments as they did with the Class. Bank of America and their law firm collected money from unlawful lawsuits it filed illegally because it had no beneficial ownership in the accounts they sued upon, additionally Bank of America received a tax benefit when it wrote off the debt

47. Bank of America accepted, appreciated and have retained such benefits.  Under such circumstances described above, it would be inequitable for Bank of America to retain such benefits without payment of value. The conduct of Bank of America was done willfully and in reckless disregard for the rights of plaintiff and the Class thereby making the award of punitive damages just and appropriate.

WHEREFORE, Plaintiff, G. Veronica Willard, and the class, demand compensatory and punitive damages against the Bank of America defendants, both jointly and severally, in an amount in excess of $150,000.00, plus court costs, counsel fees, and such other relief as this Honorable Court deems appropriate.

**COUNT II**
**VIOLATION OF THE FAIR CREDIT EXTENSION UNIFORMITY ACT (FCEUA),**
**73, P.S. §§ 2270.1 - 2270.6**
**AGAINST ALL DEFENDANTS**

Plaintiffs and the Class incorporate by reference the foregoing paragraphs as though fully set

forth herein.

48. The alleged credit card account obligation was a debt within the meaning of the

FCEUA, 73 P.S. § 2270.3 Because she was allegedly obligated to pay the credit card account

debt, plaintiff and members of the Class are each a "consumer" within the meaning of the

FCEUA 73 P.S. § 2270.3 Because the credit card account debt was alleged to be owed to it, Bank of

America's "creditor" within the meaning of the FCEUA 73 P.S. § 2270.3.

49. Bank of America and their law firm violated the FCEUA by using false, deceptive,

and/or misleading representations and/or means in connection with the collection of a debt.

FCEUA 73 P.S. § 2270.3

50. Bank of America violated the FCEUA by falsely representing the character, amount, and/or

legal status of a debt. 73 P.S. § 2270.4(b)(5)(ii).Bank of America violated the FCEUA by

attempting to collect an amount (including interest, fees, and charges) not expressly authorized

by any agreement creating the debt or permitted by law. 73 P.S. § 2270.4(b)(6)(I).  Pursuant to

FCEUA, 73 P.S. §2270.5(a), if a creditor engages in an unfair or deceptive debt collection act or

practice under FCEUA, it shall constitute a violation.

WHEREFORE, Plaintiff and the Class respectfully request that the Court enter judgment in

their favor and against all defendants.

     (a)    Actual damages, including but not limited to costs and attorney's fees to defend the collection matter;

     (b)    Treble damages;

     (c)    Costs and reasonable attorney fees; and

     (d)    Such other and further relief as may be just and proper.

## COUNT III
## VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA),
## 15 U.S.C. §§ 1692 -1692p
## <u>AGAINST ALL DEFENDANTS</u>

Plaintiffs and the Class incorporate by reference the foregoing paragraphs as though fully set forth herein.

51. Each Bank of America account obligation was a "debt" within the meaning of FDCPA, 15 U.S.C. § 1692a(5).Because they were allegedly obligated to pay the Bank of America account obligation, plaintiffs and members of the Class were each a "consumer" within the meaning of FDCPA, 15 U.S.C. § 1692a(3).

52.   Each of said defendants, at times relevant hereto, was a person who used an instrumentality of interstate commerce or the mails in a business the principal purpose of which was the collection of debts, who regularly collected or attempted to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Based on said activity or activities, each of said Defendants was a debt collector within the meaning of FDCPA, 15 U.S.C. § 1692.

53.   Bank Of America and their law firm violated FDCPA by using false, deceptive, and/or misleading representations and/or means in connection with the collection of the Bank of America account obligation.15 U.S.C. § 1692(e).

54. Said defendants violated FDCPA by falsely representing the character, amount, and/or legal status of the Bank of America account obligation. 15 U.S.C. §16923(2)(A).

55.   Said defendants violated FDCPA by using a false representation or deceptive means to attempt to collect the Bank of America account obligation. 15 U.S.C. 1692e(10).

56.   Said defendants violated FDCPA by attempting to collect an amount (including interest, fees and charges) not expressly authorized by any agreement creating the Bank of America account obligation or permitted by law, 15 U.S.C. §1692f(1).

WHEREFORE, Plaintiffs and the Class respectfully request that the Court enter judgment in their favor and against said defendants, pursuant to FDCPA, 15 U.S.C. §1602k(a), as follows:

(a)   Actual damages, including, but not limited to, costs and attorney's fees to defend the collection matter.

(b)   From each said defendant, statutory damages of $1,000.00 for each named plaintiff and, for all other class members, an amount not to exceed the lesser of $500,000.00 or 1% of the net worth of such defendant; and I

(c)   Costs of this action and reasonable attorney fees.

**COUNT IV**
**VIOLATIONS OF UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION**
**LAW 73 PS §§201-1 TO 201-9.3**
**AGAINST ALL DEFENDANTS**

Plaintiff and the class incorporates by reference the foregoing paragraphs as though fully set forth herein

57.   Plaintiff and member of the class engaged in said transactions for personal purposes.

58.   The UTCPL defines unfair or deceptive practices as engaging in fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding which both defendants engaged in

59.   Defendants behavior falls within the definition of unfair or deceptive acts or practices.

60. The defendants in this case acted in a deceptive manner by receiving benefits from lawsuits that were deceptive because of their lack of ownership of the accounts.

WHEREFORE, plaintiff and the class respectfully requests that the court enter judgment in their favor and against all defendants for actual damages, treble damages, and costs and attorneys fees.

## COUNT V
## FRAUDULENT MISREPRESENTATION
## AGAINST ALL DEFENDANTS

Plaintiffs and the Class incorporate by reference the foregoing paragraphs as though fully set forth herein.

61.   Pursuant to the Pooling and Servicing Agreement, Bank of America surrendered its right to collect on the obligation of the plaintiff and the Class. Bank of America accepted, appreciated, and retained such benefits.

62.   The conduct of Bank of America and their law firm caused the plaintiff, and the class, to rely on their statements and make payment to Bank of America on a debt that they did not own.

63.   This collection scheme caused the plaintiff and the Class extreme emotional distress. The conduct of Bank of America was done negligently and in   disregard for the rights of plaintiff and the Class thereby making the award of punitive damages just and appropriate.

WHEREFORE, plaintiff and the Class demand compensatory and punitive damages against the Bank of America defendants, both jointly and severally, in an amount in excess of $150,000.00, plus court costs, counsel fees and such other relief as this Honorable Court deems appropriate.

**COUNT VI**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS**
**18 USC §1962**
**AGAINST ALL DEFENDANTS**

Plaintiff incorporates and adopts the foregoing paragraphs 1-52 of the complaint:

64.     Plaintiff is a natural person and as such a person is within the meaning of 18 USC §1963(3).

65.     Defendants are corporate entities and as such are persons within the meaning of 18 USC §1961(3).

**THE ENTERPRISE**

66.   Bank of America, their law firm and John Does 1 through 100 comprise three distinct groups of people that together form an enterprise within the meaning of 18 USC §1961(4)Each and every individual is associated with the enterprise.

67.   The enterprise for more than four years has been engaged in activities that affect interstate commerce and remains continuous and open ended.

## PATTERN OF RACKETEERING MAIL AND WIRE FRAUD

68.     Defendants have devised a scheme to defraud and obtain money by means of fraudulent pretenses .By collecting on a debt that they no longer owned to Bank of America to facilitate a lawsuit that was illegal.

69.     Defendants have engaged in at least two acts of racketeering activity in interstate commerce through a pattern of racketeering activity including but not limited to mail fraud and bank fraud in violation of 18 USC §§1341,1343 and 1344 to support a fraudulent scheme.

70.     Each of the uses of the mails and wires in connection with the defendants constitutes a separate act of mail and wire fraud and is thus a predicate act which constitutes a pattern of racketeering activity.

71.     Each defendant agreed and conspired to engage in this illegal conduct. Plaintiff and the class has been forced and threatened to pay debts they did not owe constituting an injury to property within the meaning of 18 USC 1962 by actions of defendants and their co conspirators in violation of 18 USC §§1962(c) and (d).

## DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff and the Class incorporate by reference the foregoing paragraphs as though fully set forth herein.

72.   An actual case and substantial controversy exists between plaintiff and the Bank of America defendants and legal defendants with respect to their unfair or deceptive acts or practices and misleading misrepresentatives and non-disclosure of material facts relating to their debt collection practices.

73.   Defendants' conduct directly and proximately caused plaintiff and the Class significant damages. Defendants contend to the contrary. Therefore, the parties herein have adverse legal interests of sufficient immediacy and reality to warrant the issuance of declaratory relief. Plaintiff, on behalf of himself and all others similarly situated, is entitled to a judgment declaring defendants' practice of perpetrating unfair or deceptive acts and misleading misrepresentations and non-disclosure of mater.

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in his favor and against all defendants as follows:

(a)      A declaration that Bank of America is not the proper plaintiff to sue to collect receivables that it has securitized, and by doing so, it and its counsel, the legal defendants, violates the and the statutes of the Commonwealth of Pennsylvania (the Pennsylvania Fair Credit Extension Uniformity Act (FCEUA)); Fair Debt Collection Practices Act (FDCPA); The RICO ACT and the

Pennsylvania Unfair Trade Practices and Consumer Protection Law.

    (b)  An Order enjoining Bank of America, during the pendency of this action and

permanently thereafter, from suing any class members to collect receivables that Bank of America

has securitized, prosecuting or maintaining such a collection proceeding, and/or otherwise

representing to a current or former consumer account holder that it remained the creditor.

Dated: _____ By: _____

Christopher J. Evarts, Esq.
220 Locust St., Suite 7C
Philadelphia, PA 19106