IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| G. VERONICA WILLARD, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | NO. 16-01199 |
| | : | |
| v. | : | |
| | : | |
| BANK OF AMERICA, et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    SEPTEMBER 6, 2016

Presently before the Court are five motions to dismiss
the two Complaints of Plaintiff, G. Veronica Willard. The Court
need only address one of these motions: the "Motion to Dismiss
Amended Complaint by Defendants Bank of America, N.A., Banc of
America Consumer Card Services, LLC, and BA Credit Card Funding,
LLC." ECF No. 29. In deciding this motion, the remaining motions
become moot. For the reasons stated below, the Court will grant
the motion and dismiss the Amended Complaint with prejudice.

I.    FACTUAL AND PROCEDURAL HISTORY

On March 15, 2016, Plaintiff filed a class action
Complaint pursuant to the Fair Debt Collection Practices Act, 15
U.S.C. § 1692-1692p; the Pennsylvania Fair Credit Extension
Uniformity Act, 73 P.S. § 1692-1692p; the Unfair Trade Practices

and Consumer Protection Law, 73 P.S. § 201-1 through 201-9.3, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961-1968. ECF No. 1. She also raised state law claims for unjust enrichment and fraudulent misrepresentation. Plaintiff sued Bank of America ("BOA"), Banc of America Consumer Card Services ("BACCS"), BA Credit Card Funding ("Funding") (collectively the "Bank Defendants"), Blatt, Hasenmiller, Leibsker & Moore, LLC ("BHLM")[1], and 100 John Does.

Plaintiff alleged that she opened a credit card account with BOA on August 24, 2004. She asserted that at some point thereafter, BOA sold the receivables for the credit card account to BACCS, which in turn sold them to Funding, which ultimately sold them to Wilmington Trust Company. Wilmington Trust is not a defendant. She further alleged that despite the sale, BOA still accepted her payments. Plaintiff eventually stopped making payments on her credit card and BOA commenced a collection lawsuit and was awarded a judgment against her on February 5, 2016.

Plaintiff claimed that by securitizing the credit card receivables and selling them to Wilmington Trust, BOA relinquished its beneficial interest in the entire credit card

---

[1]      Other than being named in the caption, BHLM is not otherwise mentioned in the original Complaint.

account and she no longer owed a debt to BOA. Thus, she contended that BOA had no right to collect the credit card payments or attempt to collect from her when she defaulted.

Plaintiff also asserted that, even if the sale of the receivables was possible, the Bank Defendants failed to follow the proper procedures after she defaulted on her debt. Specifically, she contended that the receivables could not be returned to BOA so that it could start a collection action until Wilmington Trust filed a UCC termination statement.

On May 11, 2016, BOA filed a motion to dismiss the Complaint. ECF No. 8. On May 18, 2016, BHLM moved for leave to join the motion. ECF No. 12. Plaintiff then sought in an unopposed motion additional time "to respond to the Motion to dismiss," ECF No. 16, which the Court granted. ECF No. 18.

However, on June 30, 2016, instead of filing a response to the motion to dismiss, Plaintiff filed an Amended Complaint. ECF No. 20. The Amended Complaint is substantially the same as the original Complaint. Most of the changes represent argument against assertions made by the Bank Defendants in their first motion to dismiss and the addition of paragraphs concerning the filing of UCC termination statements. Plaintiff also adds a seventh count for civil conspiracy, essentially alleging that numerous organizations have engaged in the alleged scheme, including Defendants. This count is the only

place BHLM is specifically named in the Amended Complaint, other than in the caption.

On July 18, 2016, BHLM filed a motion to dismiss the Amended Complaint asserting that it was filed out of time. ECF No. 23. BHLM then filed an amended motion to dismiss on July 21, 2016. ECF No. 25. In the amended motion, BHLM incorporates the timeliness argument from its first motion and also argues, inter alia, that: (1) there are no factual or legal differences between the original and Amended Complaints; and (2) Plaintiff has not made any factual allegations supporting the allegations against BHLM and her claims are legally insufficient as to BHLM.

On August 2, 2016, the Bank Defendants filed their motion to dismiss the Amended Complaint. ECF No. 29. On August 22, 2016, Plaintiff filed her response to both BHLM's and the Bank Defendants' motions to dismiss the Amended Complaint. ECF No. 34. On August 24, 2016, the Court held oral argument regarding the pending motions. ECF No. 35. Without leave, Plaintiff then filed a supplemental response on August 28, 2016. ECF No. 36.

## II.  LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable

inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (internal quotation marks removed). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and

undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. DISCUSSION

As previously stated, this opinion will focus on the Bank Defendant's motion to dismiss the Amended Complaint, ECF No. 29, as with the disposition of this motion, all other motions become moot.[2] In their motion, the Bank Defendants attack Plaintiff's basic assumptions about the legality of securitizing credit card receivables. The Court agrees that Plaintiff's premise is fundamentally flawed. As a result, there is no need for the Court to address the individual counts in the Amended Complaint since they all stem from the erroneous allegations.

---

[2] The parties dispute whether Plaintiff had consent to file her Amended Complaint rather than merely to file a response to the then pending motions to dismiss. To solve the question and streamline the proceedings, the Court grants Plaintiff leave to file her Amended Complaint, nunc pro tunc. See Fed. R. Civ. P. 15(a)(2)(providing that the court should grant leave to amend "freely" "when justice so requires"). The Amended Complaint is nearly identical in substance to the original Complaint and both Defendants have filed substantive motions to dismiss it. Thus, the Court finds no prejudice in allowing the amendment.

Instead, the Court will limit its discussion to analyzing Plaintiff's basic premise.[3]

### A.   The Effect of the Securitization of the Receivables on the Credit Card Account

Plaintiff's first contention - that BOA loses all interest in the credit card account once it sells the receivables - has been raised previously by this Plaintiff's counsel and rejected by this Court in a decision subsequently affirmed by the Third Circuit. Scott v. Bank of America, et al, No. 13-987, 2013 WL 6164276 (E.D. Pa. Nov. 21, 2013), aff'd, 580 F. App'x 56 (3d Cir. Nov. 3, 2014). Moreover, every time this argument has arisen across the country, it has been rejected.[4]

---

[3]      The Defendants raise two other potentially fatal issues regarding the Amended Complaint. First, as stated, Plaintiff's Amended Complaint is wholly premised on the fact that BOA securitized her credit card receivables and sold them off. BOA disputes this fact and contends that it will produce an affidavit establishing that Plaintiff's receivables were never securitized. In her response, Plaintiff seems to confirm that she will withdraw the lawsuit if BOA produces "the affidavit that was promised, that the account was not securitized." ECF No. 34 at 10 n.2. However, the Court has not received such an affidavit, thus, it will not address this contention further.

BHLM also noted in the Joint Rule 26(f) status report, ECF No. 32 at 3, that Plaintiff withdrew an appeal of the February 5, 2016 arbitration award in Philadelphia in the full amount of the debt at issue here. BHLM stated at the hearing that it would file the judgment and suggested that it would have claim preclusive effect in this case. BHLM has not yet provided proof of the filing, thus, the Court will also not entertain this argument further.

[4]      See Batchelor v. Wells Fargo Bank, N.A., No. 12-14835, 2013 WL 1499583, at *3 (E.D. Mich. Mar. 15, 2013) ("Plaintiff's

argument – that Defendant's securitization of his loan relieved him of his obligation to pay on the note – has been consistently rejected by judges in this district and nationwide."); <u>Leone v. Citigroup, Inc.</u>, No. 12-10597, 2012 WL 1564698, at *4 (E.D. Mich. May 2, 2012) ("Finally, to the extent plaintiff is attempting to assert a claim based upon the securitization of the mortgage loan, such a claim fails."); <u>Bhatti v. Guild Mortgage Co.</u>, No. 11-0480, 2011 WL 6300229, at *5 (W.D. Wash. Dec. 16, 2011) ("Securitization merely creates a separate contract, distinct from the Plaintiffs' debt obligations under the Note, and does not change the relationship of the parties in any way."), <u>aff'd in part</u>, 550 F. App'x 514 (9th Cir. 2013); <u>Shade v. Bank of America</u>, No. 08-1069, 2009 WL 5198176, at *3-4 (E.D. Cal. Dec. 23, 2009) ("Plaintiff has also failed to demonstrate how defendants' efforts to collect on an overdue credit card account constitutes fraud, even where the account may have been securitized."), <u>aff'd</u>, 2011 WL 794605 (9th Cir. 2011); <u>Tostado v. Citibank (South Dakota)</u>, No. 09-549, 2010 WL 55976, at *3 (W.D. Tex. Jan. 4, 2010) (dismissing plaintiff's FDCPA claim in relation to a credit card account where it was "premised on the argument that Citibank 'did not own the debt or the right to sue for the debt.' . . . Citibank has demonstrated that it retains ownership over the accounts to which the master trust owns the receivables") (citation omitted); <u>Citibank (South Dakota), N.A. v. Carroll</u>, 220 P.3d 1073, 1076 (Idaho 2009) (finding that the credit card issuer had standing to bring a collection action and rejecting plaintiff's argument that "Citibank's assignment of the receivables from her account to a trust, as part of an asset-securitization transaction, deprives Citibank of the right to sue because an assignor is not a real party in interest"); <u>see also Davidson v. Capital One Bank (USA), N.A.</u>, 44 F. Supp. 3d 1230, 1243 (N.D. Ga. 2014) ("Plaintiff's understanding of securitization is incorrect. The securitization of receivables does not change the relationship between a debtor and creditor."), aff'd, 797 F.3d 1309 (11th Cir. 2015); <u>Klohs v. Wells Fargo Bank, N.A.</u>, 901 F. Supp. 2d 1253, 1260 (D. Haw. 2012) (Securitization does not alter the relationship or rights of the parties to the loan, but merely creates a separate contract, distinct from plaintiffs' debt obligations under the note and does not change the relationship of the parties in any way.") (internal quotation marks and alterations omitted).

The Bank Defendants argue that Plaintiff is relying on a flawed theory that when creditors securitize receivables, they somehow lose the ability to collect on the underlying debt. They contend that, as they explained in Scott, under the Pooling Agreement which controls these sales, the Bank Defendants transfer eligible credit card receivables to a trust, which then sells bonds backed by those receivables. So long as the accounts are in good standing, their receivables remain in the trust. However, if an account falls into default and has all of its receivables charged off as uncollectible, those receivables are immediately ejected from the trust and sold back to Funding, which then sells them back to BOA through BACCS. As the Pooling Agreement makes explicitly clear, the only items being sold to the trust are the receivables, not the underlying accounts. See Am. Compl. Exh. A Pooling Agreement § 2.01 "Conveyance of Receivables" ECF No. 20 at 57. BOA maintains ownership of the related credit card accounts and the right to collect thereon throughout the entire process.

The identical argument, based on nearly identical facts was raised in Scott by this Plaintiff's counsel. Judge Pratter in that case recognized that "both mortgage and credit card cases[] have rejected unequivocally the idea that securitizing receivables changes the relationship between a debtor and a creditor." 2013 WL 6164276, at *3. She also noted

that the Pooling Agreement controlling the transactions made
"clear that only receivables, not entire accounts, are sold in
the securitization process," citing Section 2.01, just as the
Bank Defendants have argued in this case. Id. Ultimately Judge
Pratter concluded that "Scott has not provided the Court with
adequate allegations or legal arguments to conclude that the
Bank Defendants violated any laws or contract provisions in
their handling of her account." Id. at 5.

On appeal, the Third Circuit Court of Appeals affirmed
Judge Pratter's decision holding that "Scott misapprehends the
effect of securitizing a credit card receivable. 'Credit card
securitization involves the securitization solely of the
receivables, not of the accounts themselves.'" Scott v. Bank of
Am., 580 F. App'x 56, 57 (3d Cir. 2014) (quoting Adam J.
Levitin, Skin-in-the-Game: Risk Retention Lessons from Credit
Card Securitization, 81 GEO. WASH. L. REV. 813 (2013)). The
Third Circuit also noted, as had Judge Pratter, that "[t]he
courts that have considered the effect of securitizing credit
card receivables are all in agreement that it does not divest
the issuer of its ownership interest in the credit card
accounts." Id. This Court agrees with the analysis presented in
these cases and holds that Plaintiff's argument to the contrary
is meritless.

**B.     The Necessity of Filing a Termination Statement before Removing the Receivables from the Trust**

Plaintiff also contends that even though the Pooling Agreement provides that when a credit card account goes into default the associated receivables are automatically removed from the trust and returned to the Bank Defendants[5], under the law there can be no such automatic reversion. Instead, pursuant to the UCC, Plaintiff asserts that the trustee must file a termination statement and release its lien against the receivables before they can revert back to the transferor for collection.

Plaintiff asserts two arguments why there is no legitimate automatic reversion of the receivables and instead a termination statement must first be filed. Plaintiff's arguments amount to a straw house built on the sand – their foundations shift and are ultimately insubstantial.

First, Plaintiff contends that U.C.C. § 9-513(c), regarding termination statements for other collateral, controls. The plaintiff in Scott raised this argument as well, and Judge Pratter rejected it, finding in part that "[s]he cites no authority for this supposed requirement in her opposition brief." Scott, 2013 WL 6164276, at *4. Here too, Plaintiff,

---

[5]     See Am. Compl. Exh. A Pooling Agreement § 2.04(d)(ii)-(iii) "Transfer of Ineligible Receivables" ECF No. 20 at 63-64.

provides no indication why this section of the U.C.C. controls in this particular situation.

Nonetheless, even if the provision is relevant, it does not present the answer Plaintiff seeks. U.C.C. § 9-513(c) provides that after a secured party (here, Wilmington Trust) receives a demand from the debtor (here, BOA), the secured party shall send to the debtor a termination statement. Comment 2 of this provision continues: "no compulsion is placed on the secured party to file a termination statement unless demanded by the debtor." U.C.C. § 9-513 cmt.2. Thus, only if BOA demands a termination statement would it be necessary for Wilmington Trust to file one. Plaintiff's argument dissolves in light of the fact that she cites no authority indicating that BOA had an obligation to make that demand. Since BOA did not make such a demand (and indeed alleges that it never securitized and sold off Plaintiff's receivables in the first place), Wilmington Trust was under no obligation to file a termination statement.

Second, Plaintiff contends that the Bank Defendants' own Pooling Agreement indicates that Wilmington Trust was required to file a termination statement. This is not specifically true, however. What Plaintiff actually argues is that Exhibit G to the Pooling Agreement, which is a sample form for the reassignment of receivables, provides in part:

> In connection with such [a] transfer [of receivables], the Trustee agrees to authorize and deliver to Funding

> on or prior to the date of this Reassignment, a
> termination statement with respect to the Receivables
> now existing and hereafter created in the Removed
> Accounts designated hereby (which may be a single
> termination statement with respect to all such
> Receivables) evidencing the release by the Trustee of
> its Lien on the Receivables in the Removed Accounts,
> and meeting the requirements of applicable state law,
> in such manner and such jurisdictions as are necessary
> to remove such Lien.

Am. Compl. Exh. A Pooling Agreement Exhibit G ¶ 3(b) ECF No. 20 at 164. Plaintiff points to no provision requiring the parties to use this form and the Court finds that Exhibit G is merely illustrative. Indeed, the actual Pooling Agreement clearly specifies that when an account falls into default, the associated receivables are automatically ejected from the trust and sold back to the Bank Defendants with no further action necessary. See Am. Compl. Exh. A Pooling Agreement § 2.04(d)(ii)-(iii) "Transfer of Ineligible Receivables" ECF No. 20 at 63-64. Again, Judge Pratter entertained this argument in Scott. She found that Exhibit G was "merely [a] sample form[] to be used when reconveying or removing receivables from the Trust." 2013 WL 6164276, at *4. This Court agrees. To the extent that Plaintiff wishes to rely on the Pooling Agreement, she should look to its text, not a sample form.

In summation, Plaintiff's argument is again rejected by this Court. Plaintiff admits that her theory regarding the necessity of a termination statement is novel. However, she

13

provides no solid authority from which to build her argument and instead spins only gossamer allegations.

## IV. CONCLUSION

The bedrock of Plaintiff's Amended Complaint is unsound. This Court, as well as the Third Circuit Court of Appeals and many other courts across the country have concluded that a bank does not lose its interest in a credit card account when is securitizes the receivables associated with the account.

Moreover, Plaintiff has failed to establish that before receivables associated with a defaulted credit card account may be transferred from a trust back to the bank that issued the card, the bank must request that the trust issue a termination statement. As a result of Plaintiff's flawed premise, the Amended Complaint must be dismissed. Given this fundamental fault, any further amendment to the Complaint would be futile. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."). As a result, the Court will dismiss the Amended Complaint with prejudice.

An appropriate Order follows.